**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

MIGDALIA FERRER BÁEZ

      Plaintiff,

         v.                             CIVIL NO.: 20-1395 (MEL)

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**OPINION AND ORDER**

**I.    Procedural and Factual Background**

      Pending before the court is Ms. Migdalia Ferrer Báez's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits under the Social Security Act. ECF No. 14. On May 25, 2016, Plaintiff filed an application for Social Security benefits alleging that she initially became unable to work due to disability on October 8, 2015 ("the onset date"). Tr. 21. Prior to the onset date, Plaintiff worked as a quality control technician or a computer systems hardware analyst. Tr. 32. Plaintiff met the insured status requirements of the Social Security Act through September 30, 2021. Tr. 23. Plaintiff's disability claim was denied on August 15, 2016 and upon subsequent reconsideration. Tr. 21.

      Thereafter, Plaintiff requested a hearing which was held on December 11, 2018 before an Administrative Law Judge ("the ALJ"). Tr. 21. The ALJ kept the record open after the hearing so that Plaintiff could undergo a neuropsychological evaluation on January 18, 2019. Tr. 21. Plaintiff was granted an additional 20 days after the exam to submit evidence from the evaluation into the record, and Plaintiff timely introduced evidence which was received as an exhibit. Tr.

21. Accordingly, a supplemental hearing before the ALJ was held on April 9, 2019. Tr. 21. On May 15, 2019, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 34. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 1–5. Plaintiff filed a complaint on August 1, 2020. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 14, 23.

## II.    Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg

2

v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

　　While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B. Disability under the Social Security Act

　　To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the

ALJ determines that there is work in the national economy that plaintiff can perform, then
disability benefits are denied. 20 C.F.R. § 404.1520(g).

### C. The ALJ's Decision

In the case at hand, the ALJ found that Plaintiff would meet the insured status
requirement of the Social Security Act through September 30, 2021. Tr. 23.[1] At step one of the
sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful
activity since October 15, 2015. Tr. 23. At step two, the ALJ determined that Plaintiff had the
following severe impairments: Degenerative disc disease, epilepsy, systemic lupus
erythematosus ("SLE" or "lupus"), obstructive sleep apnea, chronic kidney disease,
hypertension, obesity, and major depressive disorder. Tr. 24. At step three, the ALJ found that
Plaintiff did not have an impairment or combination of impairments that met or medically
equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix
1, including listing 14.02 for lupus. Tr. 24. Next, the ALJ determined that during the relevant
period:

> [Plaintiff] has the residual functional capacity to perform light work as defined in
> 20 CFR 404.1567(b) except that she can lift and/or carry 20 pounds occasionally
> and 10 pounds frequently; she can sit for 6 hours in an 8-hour workday and stand
> and/or walk for 6 hours. She can push and/or pull as much as she can lift and/or
> carry. The claimant can climb ramps and stairs occasionally, but never climb
> ladders, ropes nor scaffolds; she can balance frequently, and stoop, kneel, crouch
> and crawl occasionally. She cannot be exposed to unprotected heights nor operate
> a motor vehicle, but she can occasionally work around moving mechanical parts.
> As for mental functioning, the claimant can only perform simple, routine and
> repetitive tasks.

Tr. 27. At step four, the ALJ determined that during the relevant period, Plaintiff could not
perform her past relevant work as a quality control technician or a computer system hardware

---

[1] Because the ALJ's decision was published on May 15, 2019, her evaluation preceded Plaintiff's date last insured.
Tr. 23, 34.

analyst. Tr. 32. At step five, the ALJ presented Plaintiff's RFC limitations, as well as her age,

education, and work experience to a vocational expert ("VE"). Tr. 33. The VE testified that a

hypothetical individual with a similar RFC would be able to perform the following representative

occupations: garment sorter, electronics worker, and mail clerk. Tr. 33. Because there was work

in the national economy that Plaintiff could perform, the ALJ concluded that she was not

disabled. Tr. 33.

## III.   LEGAL ANALYSIS

Plaintiff asserts that the ALJ failed to follow correct legal standards when the ALJ

determined that Plaintiff did not meet medical listing 14.02(A) or 14.02(B) for Plaintiff's

systemic lupus erythematosus. ECF No. 14 at 13–16. As such, Plaintiff argues that error on this

point warrants a reversal of the Commissioner's decision and a finding that the Plaintiff is

disabled. ECF No. 14 at 16. At step three of the sequential process, the claimant bears the burden

of proving that his impairment or combination of impairments meets or equals a listing in 20

C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 404.1520(d); Dudley v. Sec'y of Health

& Human Servs., 816 F.2d 792, 793 (1st Cir. 1987) ("[t]he burden to demonstrate the existence

of such a [listed] impairment rests with the claimant."). To meet the criteria of a listing, the

claimant's impairment must satisfy all the duration and objective medical requirements. See

Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment

matches a listing, it must meet all of the specified medical criteria. An impairment that manifests

only some of those criteria, no matter how severely, does not qualify."); 20 C.F.R.

§ 404.1525(c)(3).

Listing 14.00 pertains to immune system disorders, which includes systemic lupus erythematosus under listing 14.00D1. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 14.00, 14.00D1. For lupus to medically equal a listing, a claimant's lupus must satisfy either the section 14.02 paragraph A ("14.02(A)") or the paragraph B ("14.02(B)") criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 14.02(A)–(B). The 14.02 paragraph A criteria requires that a claimant show that her lupus involves, (1) "two or more organs/body systems" and a showing that both (2) "[o]ne of the organs/body systems [is] involved to at least a moderate level of severity"; and (3) the claimant demonstrates at least two "constitutional symptoms or signs" of severe fatigue, fever, malaise, or involuntary weight loss. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 14.02(A). Lupus may also qualify as a listed impairment under the 14.02 paragraph B criteria. Paragraph B requires that a claimant with repeated manifestations of lupus first demonstrate at least two "constitutional symptoms or signs" of severe fatigue, fever, malaise, or involuntary weight loss and one of the following limitations at the "marked level": (1) "[l]imitation of activities of daily living"; (2) "[l]imitation in maintaining social functioning"; or (3) "[l]imitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 14.02(B).

The ALJ's analysis of listings 14.02(A) and 14.02(B) with respect to lupus was succinct, stating only that

> As for claimant's lupus, the claimant's condition does not meet Listing 14.02 because the evidence does not show involvement of two or more organs or body systems, one of these to a moderate degree, nor repeated manifestations of [lupus] with at least two of the constitutional symptoms or signs along with a marked limitation in one of the four paragraph B criteria or areas of mental functioning.

Tr. 24.

"Courts have remanded for an ALJ to consider a listing where some of the evidence indicates that [claimant] may have met a listing, finding that the ALJ was required to actually evaluate the evidence, compare it to [the relevant listing], and explain his conclusion." Colón v. Commissioner of Soc. Sec., 2020 WL 5774939, *9 (D.P.R. Sep. 28, 2020) (internal quotations omitted); Reynolds v. Commissioner of Soc. Sec., 424 Fed. Appx. 411, 416 (6th Cir. 2011) ("the ALJ needed to actually evaluate the evidence, compare it to . . . the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review."); Burnett v. Commissioner of Soc. Sec. Admin., 220 F.3d 112, 120 (3rd Cir. 2000) ("Because we have no way to review the ALJ's hopelessly inadequate step three ruling, we will vacate and remand the case for a discussion of the evidence and an explanation of reasoning supporting a determination that [Plaintiff's] 'severe' impairment does not meet or is not equivalent to a listed impairment."). Likewise, in the First Circuit, "[w]hen an agency has not considered all relevant factors in taking action, or has provided insufficient explanation for its action, the reviewing court ordinarily should remand the case to the agency." Seavey v. Barnhart, 276 F.3d 1, 12, (1st Cir. 2001). In this case, the court must examine the ALJ's sparse finding regarding the listing to determine if it is supported by substantial evidence and was properly evaluated.

### A. Listed Impairment 14.02(A)

#### 1. Whether Plaintiff's Lupus Involves Two or More Organs or Body Systems, One of Which at a Moderate Level of Severity

Plaintiff argues that the ALJ erred in analyzing listing 14.02(A) because the record shows that her lupus involves her brain and her kidneys, as well as evidence of heart disease or hypertension. ECF No. 14 at 15. The first two criteria of listing 14.02(A) requires a claimant to show that her lupus involves, (1) "two or more organs/body systems" and a showing that both (2) "[o]ne of the organs/body systems [is] involved to at least a moderate level of severity . . . ." 20

C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 14.02(A). Listing 14.00D1 provides that "[m]ajor organ or body system involvement can include: Respiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ("lupus fog"), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 14.00, 14.00D1(a).

The ALJ's analysis of listing 14.02 referred to the assessment of Plaintiff's treating rheumatologist Dr. Eric Quiñones Cordero, who concluded on April 18, 2016, November 11, 2016, December 22, 2016, February 22, 2017, and May 25, 2017 that Plaintiff's organ or system involvement with regard to her lupus was "unspecified." Tr. 791, 919, 970, 239, 241. However, an "unspecified" involvement does not necessarily mean that Plaintiff's lupus does not affect her organs or body systems, and the ALJ's opinion later cites to evidence which shows that the ALJ was aware of evidence which shows that Plaintiff's lupus did indeed involve two organs or body systems—and one to at least a moderate degree. Specifically, the ALJ's opinion ignored her own findings that Plaintiff's lupus involved Plaintiff's "immune system disorder" and "renal system." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 14.00, 14.00D1(a).

First, in analyzing Plaintiff's residual functional capacity, the ALJ discussed several serious effects of lupus involving her immune system with impacts on her rheumatic conditions. Tr. 29. The ALJ noted that "since October 31, 2015", Plaintiff's lab reports have been positive for "antinuclear antibodies" and C-reactive protein. Tr. 762, 765, 946, 961. During the supplemental hearing before the ALJ on April 9, 2019, medical expert Dr. José Rolón Rivera ("Dr. Rolón") testified that Plaintiff's lab reports indicated an inflammatory process in Plaintiff's

shoulders, hands, and sacroiliac joints associated with her "systemic lupus." Tr. 48–50. Accordingly, the ALJ wrote in the RFC that "a three-phase bone scan on August 11, 2015 revealed acute inflammatory process in both shoulders, mild inflammatory process in several joints of both hands, and inflammatory or degenerative changes throughout the spine, sacroiliac joints, heels and feet. Tr. 29, 769.

Therefore, clear evidence in the record of which the ALJ was aware demonstrated that Plaintiff's lupus involved her immune system disorder and impacting her joints. Nevertheless, the ALJ ignored this evidence in assessing listing 14.02(A) without evaluating or explaining her conclusion, merely writing "the evidence does not show involvement of two or more organs or body systems, one of these to a moderate degree . . . ." Tr. 24. As cited by the ALJ, acute inflammatory process in Plaintiff's shoulders indicates a severe involvement of lupus in Plaintiff's joints. When combined with "inflammatory and degenerative changes" in her spine, sacroiliac joints, heels, and feet, the medical evidence indicates an involvement of Plaintiff's lupus in her immune system that is at the very least moderate. This evidence had to be taken into account when analyzing whether Plaintiff qualified for listing 14.02(A).

Secondly, in formulating the RFC, the ALJ also cited evidence regarding the involvement of Plaintiff's lupus on her kidneys. "In association with claimant's lupus" the ALJ cited a lab report from May 31, 2014 showing "high levels of bun and creatinine", noting that Plaintiff "has been treated by nephrologists for chronic kidney disease, with progress notes documenting altered renal parameters and symptoms associated with proteinuria and creatine above baseline levels." Tr. 29, 769. Additionally, in the context of Plaintiff's lupus, the ALJ noted an August 31, 2016 radiology report which identified no "suspicious renal lesions" sonographically, but which "revealed mildly decreased renal cortical thickness bilaterally, suggestive of mild bilateral

cortical atrophy." Tr. 29, 846. While the involvement of Plaintiff's lupus with her renal system may be of mild severity, evidence which the ALJ cited nevertheless shows some involvement of Plaintiff's lupus with her kidneys. Consequently, at step three, the ALJ's perfunctory finding that "the evidence does not show involvement of two or more organs or body systems" was also erroneous when she failed to evaluate, when analyzing listing 14.02(A), evidence showing involvement of Plaintiff's renal system.

In sum, the record does indeed indicate that Plaintiff's lupus involved two of Plaintiff's major organ or body systems, namely her immune system and her renal system. The ALJ erred in ignoring and not evaluating that evidence when assessing the paragraph A listing for lupus. Furthermore, the ALJ erred in ignoring and failing to evaluate evidence which indicates Plaintiff's lupus affected her immune system to at least a moderate level. Accordingly, the ALJ's finding with regard to the first two criteria of Listing 14.02(A) was not supported by substantial evidence and did not comply with the correct legal standards.

### 2.   Whether Plaintiff Demonstrates At Least Two Constitutional Symptoms or Signs

Even if the ALJ erred in dismissing that Plaintiff's lupus did not involve two or more organs or body systems, the Commissioner argues that Plaintiff "failed to demonstrate at least two constitutional symptoms or signs" as required under both 14.02(A) and 14.02(B). ECF No. 23 at 14. The third criteria under 14.02 paragraph A and the first criteria under 14.02 paragraph B requires that the Plaintiff demonstrates at least two "constitutional symptoms or signs" of severe fatigue, fever, malaise, or involuntary weight loss. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 14.02(A)–(B). Plaintiff argues that "there is more than enough evidence on the record of [P]lainiff's complaints of extreme and recurring fatigue" and that her "constant, daily pain" is evidence of malaise. ECF No. 14 at 14–15. The definitions under 20 C.F.R. Part 404, Subpart P,

Appendix 1, Part A2, § 14.00(C)(2) define "severe fatigue" as "a frequent sense of exhaustion that results in significantly reduced physical activity or mental function" and define "[m]alaise" as "frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." 20 C.F.R. Part 404, Subpt. P, App. 1, Part A2, § 14.00(C)(2).

As discussed above, the ALJ must evaluate the evidence and provide an explained conclusion for judicial review. Seavey, 276 F.3d at 12; Colón, 2020 WL 5774939, at *9; Reynolds, 424 Fed. Appx. at 416; Burnett, 220 F.3d at 120. For example, when a plaintiff identifies evidence in the record to show she meets listing 14.00, the ALJ's lack of explanation regarding her determination may constitute error, particularly when at step three a proper analysis could lead to the granting of benefits. Rockson v. Commissioner of Soc. Sec., 2014 WL 5421239, *5–6 (E.D. MI. Oct. 24, 2014) ("Because [plaintiff] has pointed to evidence in the record that she met the criteria for Listing 14.00, she has shown that she suffered harm from the ALJ's refusal to explain his determination: 'The ALJ's error was not harmless . . . if the ALJ had properly analyzed Step Three . . . [Plaintiff] would receive benefits regardless of what the ALJ's conclusion would have been at Steps Four and Five.'") (citing Reynolds, 424 Fed. Appx. at 416). In this case, there is evidence regarding Plaintiff's fatigue and malaise, but the ALJ did not discuss that evidence, weigh it, or apply it to listing 14.02.[2]

Plaintiff complained of fatigue in her June 2016 function reports, and at the hearing before the ALJ, where she described that she feels constant fatigue during the day as if she had done a lot of exercise. Tr. 70, 94, 96, 113, 116. At step three, the ALJ cited, but did not discuss, Plaintiff's visits with her treating neurologist, Dr. José Acevedo Batista ("Dr. Acevedo"), where

---

[2] Although the ALJ did make references to "diffuse body pain" and "fatigue" in her decision, she did so in the context of claimant's RFC determination, not as to listing 14.02 and lupus. Tr. 28, 29.

Dr. Acevedo reported that Plaintiff denied having fatigue, fever, or malaise on April 29, 2015, June 29, 2015, October 2, 2015, March 3, 2016, December 13, 2016, January 31, 2017, May 7, 2018, September 6, 2018, October 4, 2018, and October 23, 2018. Tr. 142, 146, 150, 154, 1089, 1093, 1097, 1101, 1105, 1109. Both sources of evidence draw on Plaintiff's subjective complaints—or failure to complain—of fatigue. The ALJ is entitled to weigh this evidence and assess credibility in deciding whether the Plaintiff suffers from "severe fatigue" based on the above evidence. However, in this case, the ALJ gave no explanation as to why she rejected Plaintiff's subjective complaints of fatigue but accepted Dr. Acevedo's reports that Plaintiff did not make subjective complaints of fatigue. Instead, the ALJ merely wrote "the evidence does not show . . . at least two of the constitutional symptoms or signs" without any further explanation. Tr. 24. While the ALJ may weigh conflicting evidence, she cannot simply ignore evidence without providing any explanation for why she found Dr. Acevedo's reports of Plaintiff's complaints more credible than those of the Plaintiff herself.

Plaintiff also asserts that the "constant, daily pain that [lupus] causes, which is a constant [in] the medical evidence, more than complies with the malaise" requirement. ECF No. 14 at 15. The record evidence cited by the ALJ indeed contains evidence that Plaintiff complained of pain, often severe pain, to her doctors on a regular basis. Tr. 823, 240, 791, 919, 969. Additionally, the ALJ cited evidence by Plaintiff's treating rheumatologist Dr. Quiñones who reported that Plaintiff complained of "discomfort in [the] whole body" on February 22, 2017 and May 25, 2017. Tr. 237, 240. Such bodily pain and discomfort may constitute malaise as defined as "frequent feelings of illness, bodily discomfort, or lack of well-being." However, the ALJ did not discuss this evidence at step three, nor place the court in a position to review the ALJ's findings.

Instead, the ALJ merely concluded without explanation, "the evidence does not show . . . at least two of the constitutional symptoms or signs . . . ." Tr. 24.

In short, evidence in the record does show that Plaintiff may suffer from the constitutional symptoms or signs of severe fatigue and malaise. While the ALJ can weigh, evaluate, and dismiss Plaintiff's complaints of fatigue and malaise as insufficient for the purposes of meeting the criteria for a listing, the ALJ did not provide any such reasoning when analyzing the criteria of 14.02(A), and she is not at liberty to ignore the evidence entirely. The ALJ should have provided some explanation as to how she came to her decision, rather than making a bare assertion that "the evidence does not show . . . at least two of the constitutional symptoms or signs . . . ." Tr. 24. Had the ALJ properly evaluated Plaintiff's fatigue and malaise, it is possible Plaintiff would have received benefits at step three, without need for the ALJ to proceed to steps four and five. Because the ALJ has not placed the court in a position to provide meaningful review of her rejection of Plaintiff's qualifications for listing 14.02(A), the ALJ committed reversible error.

**B. Listed Impairment 14.02(B)**

Plaintiff also contends that the ALJ erred in finding that the evidence did not support a finding that Plaintiff did not qualify for a listing under listing 14.02 paragraph B. ECF No. 14 at 15. Listing 14.02(B) requires that a claimant with repeated manifestations of lupus first demonstrate at least two "constitutional symptoms or signs" of severe fatigue, fever, malaise, or involuntary weight loss. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 14.02(B). As already discussed above, the ALJ failed to properly evaluate and explain the evidence regarding whether Plaintiff suffers from two constitutional symptoms or signs. Therefore, had the ALJ not erred, the Plaintiff may have succeeded in showing the first criteria of 14.02(B). The second criteria of

Paragraph B requires the claimant to show one of the following limitations at the "marked level": (1) "[l]imitation of activities of daily living"; (2) "[l]imitation in maintaining social functioning"; or (3) "[l]imitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 14.02(B).

Plaintiff argues that the testimony of medical expert, Dr. June Jiménez, establishes that Plaintiff qualifies under the second criteria of 14.02(B). See ECF No. 15–16. Dr. Jiménez's testimony sets forth that Plaintiff "had short term memory problems[,] moderate; would have problems performing tasks that are complex; has changes in cognitive areas; would at least be limited to simple, repetitive routine tasks; . . . should have supervision to manage her own funds . . . [P]laintiff would achieve performance in a slow manner . . . and would have moderate difficulties understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself." ECF No. 14 at 15–16. However, the evidence which Plaintiff cites makes no connection between Plaintiff's lupus and these alleged limitations. Plaintiff was also diagnosed with major depressive disorder and epilepsy, which were the general subjects of Dr. Jiménez's testimony—not lupus. Tr.24; 51–52. Moreover, unlike the in 14.02(A) above, Plaintiff cites to no evidence that her lupus was a contributing factor to the limitations meeting the second criteria 14.02(B), as opposed to her severe depression or epilepsy. Because neither Plaintiff nor the ALJ cites record evidence which ties Plaintiff's lupus to any of Plaintiff's above limitations, the ALJ did not err.

In conclusion, at step three, substantial evidence in the record supports the ALJ's decision that Plaintiff does not qualify for listed impairment 14.02(B) for lupus. However, the ALJ erred by ignoring and failing to evaluate evidence under all three criteria of listing 14.02(A) for lupus. The ALJ's error does not necessarily merit a grant of benefits because the record also

does not clearly establish that Plaintiff qualifies under listing 14.02(A). Nevertheless, the ALJ's error requires a remand so that she can properly and more thoroughly discuss the evidence regarding Plaintiff's qualification for the paragraph A listing for lupus.

### C. The ALJ's Decision at Steps Four and Five

The Plaintiff also challenges the decision of the Commissioner at Step four and five. However, because the court does not dictate or suggest any outcome of step three upon remand, it also declines to pronounce regarding the ALJ's decision at steps four and five. The ALJ may very well find that Plaintiff's lupus still does not qualify under the listing, but her decision must sufficiently articulate her reasoning. However, the ALJ may also, upon remand, determine that Plaintiff's lupus qualifies as a listed impairment after fully considering the evidence and providing an explanation of her reasoning. In that case, it would be unnecessary for the ALJ to reach steps four and five. Rockson, 2014 WL 5421239, *5–6 (" [I]f the ALJ had properly analyzed Step Three . . . [Plaintiff] would receive benefits regardless of what the ALJ's conclusion would have been at Steps Four and Five.") (citing Reynolds, 424 Fed. Appx. at 416). Therefore, because remand at step three could potentially resolve Plaintiff's claim in its entirety, it is unnecessary for the court to proceed to review the ALJ's decision at steps four and five. Any such pronouncement is unripe until the ALJ has decided the outcome at step three.

### IV.   CONCLUSION

Based on the foregoing analysis, the decision of the Commissioner at step three regarding Plaintiff's qualification under listing 14.02(A) was not based on substantial evidence and failed to follow correct legal standards. Therefore, the Commissioner's decision is VACATED and the case REMANDED so that the ALJ may fully consider the evidence and explain her analysis of

whether Plaintiff qualifies for a listed impairment under listing 14.02. This remand does not dictate any outcome with regard to the final finding of disability.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 18th of March, 2022.

s/Marcos E. López
U.S. Magistrate Judge